UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SABOURAH EDWARDS, | : | NO. 3:23-CV-01590 |
|    Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
|    Defendant. | : | |

### MEMORANDUM OPINION

This is an action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Sabourah Edwards's claim for supplemental security income benefits under Title XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference). For the reasons stated herein, the Court affirms the decision of the Commissioner.

**I.   BACKGROUND**

   **A.   Procedural History**

On November 30, 2018, Edwards protectively filed a Title XVI application for supplemental security income benefits, alleging disability beginning November 1, 2018. Complaint, Doc. 1 ¶ 5; Tr., Doc. 9-2 at 12.

1

The Social Security Administration initially denied Edwards's claims (Doc. 9-4 at 2), so Edwards appealed the denial, exhausting the administrative appeals procedure and filed a civil action in this Court. *See* Doc. 1 ¶¶ 6–11; Memo. Op., *Edwards v. Kijakazi*, No. 21-615, Doc. 24 at 22. In that prior civil action, Magistrate Judge Arbuckle issued an opinion and order, remanding the case. *See* No. 21-615, Doc. 24 at 22 (finding a single error warranting remand because the ALJ failed to cite a proper basis for discounting Edwards's psychologist's opinion).

Pursuant to the remand order, the Administrative Law Judge ("ALJ") held a second hearing on March 28, 2023, and issued a "partially favorable" decision, finding Edwards disabled as of May 8, 2023, but not disabled before that date. Second Tr., Doc. 10 at 2, 5, 19. The ALJ's decision, therefore, became final. 42 U.S.C. § 405(g). Pending before this Court is Edwards's appeal of that decision. Doc. 1.

B. **The Disability Determination Process**

To receive disability benefits under the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable . . . impairment which can . . . result in death or which has lasted or can be expected to last for a

2

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant is disabled "only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). An impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

Social Security regulations provide a "five-step sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful employment other than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the first step, the claimant must establish that he has not engaged in substantial gainful activity since the onset of the alleged

disability. *See* § 416.920(a)(4)(i). At the second step, claimant must establish that he suffers from a "severe medically determinable . . . impairment that meets the duration requirement in § 416.909 ("impairment . . . must have lasted or must be expected to last for a continuous period of at least 12 months")." § 416.920(a)(4)(ii). At the third step, the claimant must provide evidence that his impairment "meets or equals one of our listings in appendix 1." § 416.920(a)(4)(iii). If the claimant demonstrates his impairments meet those listings, he is considered to be disabled. *See id.*; § 416.920(d). If he cannot establish severity of impairment at the third step, the eligibility analysis proceeds to step four in which the ALJ determines whether the claimant's residual functional capacity ("RFC") allows the claimant to continue his previous employment. § 416.920(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. § 404.1545(a)(1). To prevail on step four, claimant's "impairment(s) must prevent [the claimant] from doing [the claimant's] past relevant work." § 416.920(f). At the fifth step, the Commissioner bears the burden to demonstrate that the claimant's RFC and his "age, education, and work experience . . . [allows] adjustment to

4

other work." § 416.920(a)(4)(v). If the Commissioner cannot satisfy this burden, the claimant's claim is granted. *See* § 416.920(g).

### C. The ALJ's Decision

Here, the ALJ determined that Edwards "has been disabled under . . . the Social Security Act beginning on May 8, 2023." Doc. 10 at 19. The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. § 416.920(a)(4)(i)–(v); *see* Doc. 10 at 7–19.

At step one, the ALJ determined Edwards "has not engaged in substantial gainful activity since . . . the alleged onset date." Doc. 10 at 7. At step two, the ALJ found Edwards has the following severe impairments: degenerative disc disease and spondylosis of the cervical spine, carpal tunnel syndrome on the right, major depressive disorder, anxiety, and panic attack. *Id.* At step three, the ALJ determined that none of Edwards's impairments, considered individually or in combination, met or equaled the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. *Id.* at 8.

Further, the ALJ found that since the onset of her disabilities, Edwards has the following RFC:

5

> [T]o perform light work as defined in 20 CFR 416.967(b) . . . . She can understand, remember and carry out simple instructions; can perform simple, routine and repetitive tasks and can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.

*Id.* at 10. At step four, the ALJ determined Edwards is unable to perform any past relevant work since the onset of her disabilities. *Id.* at 17. At step five, the ALJ partially denied Edwards's claims because, after considering her "age, education, work experience, and residual functional capacity," the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" before May 8, 2023, the date the claimant's age category changed. *Id.* at 18 (citing § 416.969); *see also* Medical-Vocational Guidelines Rule 202.06 (determining disability based on an individual reaching the age of fifty-five, the "advanced age.").

### D. Issues Presented

Edwards challenges the ALJ's RFC finding and step five determination, making three arguments on appeal: the ALJ (1) rejected the opinion of the treating neurologist for erroneous reasons; (2) rejected the opinion of the examining psychologist for erroneous reasons; and (3)

failed to incorporate all of Plaintiff's limitations in the hypothetical question he posed to the vocational expert. Pl.'s Br., Doc. 13 at 7, 15, 18. At bottom, Edwards contends that the ALJ erred in his assessment of the opinion of the treating sources, Drs. Gross and Betts. *See* Doc. 13 at 7–19. This case is fully briefed (Docs. 13, 17, 18) and ready for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Consent Form, Doc. 7. The Court, adhering to the deferential standard of review outlined below, affirms the decision of the Commissioner.

## II.   LEGAL STANDARD

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an

existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the

8

record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Edwards is disabled, but whether the Commissioner's finding that Edwards is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate

9

whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III.   DISCUSSION

Edwards filed for supplemental security income benefits on November 30, 2018, after the March 27, 2017, amendment to the regulations, which brought about "a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims." *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279–80 (M.D. Pa. 2022). The Court first explains the post-March 2017 governing regulation applicable to Edwards's case before turning to the legal issues.

### A.   Legal Benchmarks for the ALJ's Assessment of Medical Opinions under 20 Code of Federal Regulations § 416.920c

For claims filed "on or after March 27, 2017, the rules in this section apply." 20 C.F.R. § 416.920c. Under this regulation, the Social Security Administration "will not defer or give any specific evidentiary weight, . . . to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." § 416.920c(a).

Instead, the new regulations require an ALJ to determine and "articulate . . . how persuasive" a medical opinion is based on several factors: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. §§ 416.920c(b), (c)(1)–(5). The regulations provide that the "most important factors" when an ALJ considers "the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." § 416.920c(a). Because of the importance of those factors in determining persuasiveness, the ALJ must explain the considerations for "supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision." § 416.920c(b)(2). The ALJ may, "but [is] not required to," explain the considerations for the other factors under subsection (c). *Id.* Further, the ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." § 416.920c(b)(1).

**B.  Substantial evidence supports the ALJ's determination of Drs. Gross and Betts's opinions as unpersuasive.**

*1.  The ALJ's evaluation of Dr. Gross's medical opinion*

Edwards first argues that the ALJ erred in finding the medical opinions of Dr. Gross unpersuasive. *See* Doc. 13 at 7. Primarily, Edwards contends that the ALJ "failed to consider the consistency of Dr. Gross's opinion with the evidence from other medical or nonmedical sources, instead finding it not consistent with Dr. Gross's own findings." *Id.* at 11; Pl.'s Reply Br., Doc. 18 at 2 ("[T]he ALJ fail[ed] even to mention consistency").

First, it is permissible for an ALJ to find a treating source's opinion inconsistent with the source's own treatment records. *See, e.g., Swank v. O'Malley*, No. 23-1244, 2024 WL 4858586, at *10 (M.D. Pa. Nov. 21, 2024) (finding no error in an ALJ's analysis of the consistency factor where the ALJ noted that a claimant's treating source's opinion was internally inconsistent and was at odds with many treatment notes); *see also Solberg v. O'Malley*, No. 23-2639, 2024 WL 1943328, at *6 (E.D. Pa. Apr. 30, 2024) (finding an ALJ's consistency assessment, which determined a medical opinion unpersuasive because it was inconsistent with the source's own treatment notes, "well-reasoned and adequate"). Here, the

12

ALJ made no error by finding Dr. Gross's opinion unpersuasive by reasoning that the doctor's "own treatment records [] generally show rather objective findings including 5/5 strength in all extremities, intact coordination and normal gait" was inconsistent with Dr. Gross "limiting the claimant's ability to stand and walk for only two hours and to sit for only four hours." Doc. 10 at 17.

Second, an administrative judge is not required to use specific terminology to provide a reasonable explanation under the regulations. The Court of Appeals for the Third Circuit explains that to satisfy the articulation requirements for supportability and consistency, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Instead, it is sufficient for an ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* Here, the ALJ did exactly that.

Contrary to Edwards's contention that the "ALJ clearly considered only Dr. Gross's records, not the records of other medical providers," Doc. 18 at 2, the ALJ began his RFC explanation by reviewing and discussing treatment records from Drs. Carlo de Luna, Darren Jacobs, and Gregory

13

Weiner, Doc. 10 at 11–12 (citing to Exs. D3F, D12F). That review led the ALJ to conclude that since Edwards's "alleged onset date, treatment has been relatively conservative" and that the "majority of her doctors all agree that she is not experiencing radiculopathy," and finding that Edwards's "combination of impairments would reasonably limit her to a range of light work." *Id.* at 12–13. The ALJ then found support for concluding that Edwards is "reasonably limit[ed] to a range of light work," *id.* at 13, from nurse practitioner Cywinski and state agency medical consultant Dr. Bonita's opinions, among other sources. *See id.* at 13, 16. The ALJ discussed nurse practitioner Cywinski's consultative report and opinion, which stated that Edwards could "sit for six hours, stand for six and walk for six." *Id.* at 13. The ALJ determined that "the sitting/standing and walking limitations are supported by the records." *Id.* The ALJ also found generally persuasive Dr. Bonita's opinion, which noted that Edwards "could perform a range of light exertional work where she could occasionally perform postural activities but could never climb on ladders, ropes or scaffolds." *Id.* at 16; *see id.* (finding Drs. Bermudez and Calise's opinions that claimant could perform a range of

14

light exertional work generally consistent with the treatment records and thus persuasive).

After the discussion of treatment records and medical opinions, the ALJ addressed Dr. Gross's opinion, finding it unpersuasive. *Id.* at 17. The ALJ explained that Dr. Gross's findings "do not support nor are they consistent with limiting the claimant's ability to stand and walk for only two hours and to sit for only four hours," because the doctor's "own treatment records [] generally show rather objective findings including 5/5 strength in all extremities, intact coordination and normal gait." *Id.* Thus, the ALJ satisfied the requirement to articulate his consideration of supportability and consistency. Following an extensive review of the treatment records from various doctors, and the persuasive medical opinions of CRNP Cywinski, Drs. Bonita, Bermudez, and Calise, the ALJ "did weave supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski*, 115 F.4th at 639. The Court, therefore, finds that the ALJ's determination as to the persuasiveness of the medical opinions of Dr. Gross is supported by substantial evidence.

15

## 2.     *The ALJ's evaluation of Dr. Betts's medical opinion*

The Court also finds no error in the ALJ's determination that Dr. Betts's opinion is partially persuasive. *See* Doc. 10 at 15. The ALJ found that Dr. Betts's opinion as to "the marked limitations are not persuasive," explaining in depth how it conflicts with the mental status findings from the treatment records. *Id.* For example, the ALJ reviewed and cited to Edwards's treatment records which showed clinical findings that are generally normal. *Id.*, citing Exs. D12F, D17F, D25F, D26F. And the ALJ explained that Edwards's "cognitive functioning was considered to likely be in the average range and both her insight and judgment fair." *Id.* Moreover, the ALJ reviewed and discussed opinions from Drs. Murphy and Vigna, finding their opinions as to the limitations "generally consistent with the treatment records including the Northeast Counseling records and . . . from Geisinger Behavioral Health." *Id.* at 16. Thus, the Court finds that the ALJ's determination as to the persuasiveness of the medical opinions of Dr. Betts is supported by substantial evidence. *See Zaborowski*, 115 F.4th at 639–40 (finding an ALJ's articulation sufficient as to the opinions of psychologists where the ALJ explained how the opinions "fit with other evidence").

16

### C. Substantial evidence supports the ALJ's determination at step five.

Edwards's third argument contains two parts. The first part challenges the ALJ's "hypothetical question [which] improperly omitted credibly established limitations. Specifically, . . . the limitations assessed by Dr. Betts and Dr. Gross." Doc. 13 at 19. Mindful of the deferential standard of review and having determined above that substantial evidence supports the ALJ's evaluation of the persuasiveness of Drs. Betts and Gross's opinions, the Court does not find that the ALJ's hypothetical question improperly omitted credibly established limitations. *See Williams*, 970 F.2d at 1182 ("Neither the district court nor [The Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.").

Next, Edwards argues that there is an apparent conflict between the ALJ's RFC determination and the three occupations identified at step five. *See* Doc. 13 at 19–20. As part of the RFC finding, the ALJ limited the claimant to jobs that require that she can "understand, remember and carry out simple instructions; can perform simple, routine and repetitive tasks." Doc. 10 at 10. Edwards contends that the three jobs cited at step five require a "Reasoning Level 2" which "requires the ability

17

to carry out 'detailed' instructions," which "an individual limited to only simple instructions [like Edwards] could not carry out." Doc. 13 at 20. Upon review of the relevant case law in the Third Circuit, the Court finds that while a claimant who is limited to "very short and simple instructions" or "short and simple instructions" cannot perform jobs identified at reasoning level two, a claimant who is only limited to "simple instructions" can. *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (concluding that jobs at reasoning level two does not contradict the mandate that work be simple, routine and repetitive); *see also Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (finding no conflict between an RFC to carry out simple instructions and jobs that require reasoning level two).

Although the issue Edwards raised is often litigated, her factual circumstances that inform the issue is rather unique. As other courts in this district have found, when a claimant is limited to one- to two-step instructions (i.e., *short* and simple instructions), the claimant may not be able to perform a reasoning level two job. *See, e.g., Warren v. Dudek*, No. 24-635, 2025 WL 1168276, at *7 (M.D. Pa. Apr. 22, 2025) ("Here, the jobs identified by the ALJ at Step 5 require a reasoning level 2, which *could*

18

*be* inconsistent with a limitation to one-to-two-step tasks."); *Latourette v. King*, No. 24-516, 2025 WL 580597, at *8 (M.D. Pa. Feb. 21, 2025); *Reep v. Bisignano*, No. 24-712, 2025 WL 1508453, at *8–9 (M.D. Pa. May 27, 2025). But Edwards is limited to neither short and simple instructions nor to one- to two-step tasks, which would only qualify her for a reasoning level one job. Instead, she is limited to simple instructions. Doc. 10 at 10. That distinction is critical.

The court in *Cowher v. O'Malley* clarified this distinction. No. 21-178, 2024 WL 3161865, at *7–9 (W.D. Pa. June 24, 2024). In *Cowher*, the court explained that "a difference exists between an individual capable of following 'simple instructions,' and an individual only capable of following 'very short and simple instructions (i.e., perform one and two step tasks).'" 2024 WL 3161865, at *7. It concluded that while a limitation to very short and simple instructions is consistent with jobs at reasoning level one, courts generally find that a limitation to simple instructions is consistent with jobs at both reasoning level one and level two. *Id.* (collecting cases). Because the ALJ determined that Edwards can "understand, remember and carry out simple instructions," Doc. 10 at 10, not short and simple instructions, the Court finds no conflict at step five

19

between Edwards's RFC limitations and the three jobs identified which require reasoning level two. Substantial evidence, therefore, supports the ALJ's decision at step five.

## IV. <u>CONCLUSION</u>

Accordingly, the Commissioner's decision is **AFFIRMED**.

An appropriate order follows.

Date: October 7, 2025                              s/*Sean A. Camoni*
                                                                    Sean A. Camoni
                                                                    United States Magistrate Judge